O

CC: Magistrate Judge Woehrle
    Criminal Intake/PTS/USPO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR 08-00836(A) ABC |
| | ) | |
| | ) | ORDER DENYING MOTION FOR REVIEW |
| Plaintiff, | ) | OF MAGISTRATE JUDGE'S BAIL ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| ISRAEL SANCHEZ, | ) | |
| aka "Icha," | ) | |
| aka "Big Homie," | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before us on the Government's Application for Review of Magistrate Judge's February 16, 2011 Bail Order.  Defendant Israel Sanchez did not file a written response.  We heard oral argument on February 17, 2011.[1]  We have considered fully the record in this case, and argument of counsel.  We rule as follows:

---

[1]  Judge George H. King heard the matter for Chief Judge Audrey B. Collins.

## I.  FACTUAL AND PROCEDURAL HISTORY

Israel Sanchez, the lead defendant in this three-defendant case, is facing charges stemming from his alleged participation in a conspiracy to distribute methamphetamine.  His two co-defendants pled guilty in May 2008 and August 2010, and were sentenced to 151 months and 240 months of imprisonment, respectively.  Although the Indictment in this case was filed on July 17, 2008, it was sealed as to Defendant until his arrest on February 15, 2011.[2]

At the detention hearing on February 15, 2011, Magistrate Judge Carla Woehrle ordered Defendant released on an Appearance Bond in the amount of $50,000, fully justified with an affidavit of surety signed by Defendant's sister, with deeding of property.  Judge Woehrle also ordered, among other conditions, intensive pre-trial supervision, home confinement with electronic monitoring, and no contacts with co-defendants or any criminal street gang.  Judge Woehrle concluded that Defendant has bail resources that, in combination with other conditions, overcame the presumption of flight risk and danger to the community.  Judge Woehrle stayed her order for 48 hours to permit any appeal by the Government.

On February 16, 2011, the Government filed the instant Application seeking review of Judge Woehrle's order.  The Government argues that Defendant's lead role in the methamphetamine trafficking conspiracy, among other things, makes him a serious risk of flight and a danger to the community; hence he should be detained pending trial.

---

[2]  Notably, Defendant was present in the community for the several years between the Indictment and his arrest.  He has not been a fugitive.  The Government explained that it had strategic and tactical reasons for the delayed arrest which we accept for purposes of the Application.

## II.  LEGAL STANDARD

Under the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, a district court reviews a magistrate judge's detention or release order *de novo*. <u>U.S. v. Koenig</u>, 912 F.2d 1190, 1191 (9th Cir. 1990) (so holding).  Our determination here is therefore governed by 18 U.S.C. § 3142.  Section 3142(f) requires, among other things, that we determine "whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). The parties do not dispute that, in this case, there is "rebuttable presumption" that Defendant is a flight risk and a danger to the community.  18 U.S.C. § 3142(e).  However, "[a]lthough the presumption shifts a burden of production to the defendant, the burden of persuasion remains with the government." <u>U.S. v. Hir</u>, 517 F.3d 1081, 1086 (9th Cir. 2008).

If a defendant proffers evidence to rebut these presumptions, the court considers four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g). <u>See</u> <u>United States v. Winsor</u>, 785 F.2d 755, 757 (9th Cir. 1986) (applying factors).  "The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the

1   case as an evidentiary finding militating against release, to be

2   weighed along with other evidence relevant to factors listed in §

3   3142(g).'" Hir, 517 F.3d at 1086 (citing United States v. Dominguez,

4   783 F.2d 702, 707 (7th Cir. 1986)).

5

6                          **III.   DISCUSSION**

7   **A.   Flight Risk**

8        Although there is a rebuttable presumption of flight risk, the

9   Government nevertheless bears the burden of proving that no condition

10  or combination of conditions will reasonably assure Defendant's

11  appearance as required.  The Government contends that Defendant is a

12  flight risk for the following reasons: Defendant is facing a mandatory

13  minimum sentence of 20 years; Defendant has family members in Mexico

14  and lived in Nevada from 1998 to 2004; and Defendant has traveled to

15  Mexico.  Given the lengthy punishment Defendant is facing and his

16  ostensible ability to relocate to Mexico due to financial resources

17  that are purportedly available to him, the Government contends that

18  Defendant is a serious flight risk and that the conditions Judge

19  Woehrle imposed are insufficient to assure his presence.

20       Defendant has presented enough evidence under 18 U.S.C. § 3142(g)

21  to meet the presumption.  As disclosed in the Pre-Trial Services

22  Report (PSR), the contents of which the Government does not dispute,

23  Defendant is currently employed,[3] has a stable residence, is the sole

24  _____

25       [3]  The Government questioned, perhaps reasonably, the
    viability of defendant's continued employment at a secured
26  military base in light of the pending Indictment, but proffered
    no evidence that Defendant will be prevented from retaining his
27  job during the pendency of these charges.  In any event, whether
    Defendant is permitted to continue in this employment is not
28  dispositive given all of the relevant circumstances in this case.

                                      4

provider for his ill wife and four grandchildren who live with him, is a United States citizen, does not have a passport, and has immediate family ties in the district.

Moreover, Defendant has been aware of the threat of prosecution for several years.  In September 2008, the Government conducted a "take-down" of approximately 25 gang members with whom Defendant is alleged to be associated.  The Government did not initially charge Defendant.  But, in July 2009, Defendant and his counsel, along with a representative of the Santa Barbara County District Attorney's Office, attended a "reverse proffer" meeting with an Assistant United States Attorney at which Defendant was offered a plea agreement with a disposition including a five-year term of imprisonment.  (Defendant declined the offer.)  Furthermore, as noted, Defendant's two co-defendants pled guilty and were sentenced to lengthy prison terms. Clearly, Defendant has been aware for some time of the prospect of being prosecuted.  Given his co-defendants' lengthy sentences, Defendant has also been aware that he could face severe punishment if convicted.  Yet, despite this situation, Defendant has not fled.

The Government contends that, because Defendant is now <u>officially</u> indicted, the risk of going to prison must be much more imminent to him, making flight more attractive.  The Government also points to a September 2008 phone call between Defendant and his brother, who was in custody at that time, as evidence of Defendant's consciousness of guilt bearing on his likelihood of flight.  During that phone call, Defendant stated that he would be "going back to Las Vegas . . . We should be home by November or December" and "I've got to get out of here, man."  (Application 8:11-23.)

1    Neither of the Government's arguments is persuasive.  First,
2  based on all of the facts above, including the arrests and sentences
3  of his co-conspirators and the reverse proffer, the possibility of
4  actually being prosecuted and sentenced to a lengthy prison term has
5  likely been very real to Defendant all along.  This view is reinforced
6  by the Government's own interpretation of the phone call, which rests
7  on the notion that Defendant believed he could be targeted by the
8  authorities.  Yet, despite stating "I've got to get out of here,"
9  Defendant nevertheless did not flee.  In fact, the recorded
10  conversation that was excerpted for the court by the Government is
11  ambiguous, at best.  The Indictment simply has not changed the
12  situation so much that Defendant, who could have fled at any point in
13  the last two years and several months, is now significantly more
14  likely to flee.

15    In any event, the Magistrate Judge imposed conditions on
16  Defendant's release designed to mitigate the risk of his flight and to
17  "reasonably assure" his appearance.  Specifically, Judge Woehrle
18  required a $50,000 fully justified appearance bond, with deeding of
19  property, and ordered home confinement with electronic monitoring, and
20  other conditions.  Home detention and electronic monitoring are likely
21  to reduce the risk of flight because the supervising Pre-Trial
22  Services Officer would be notified if Defendant oversteps the
23  limitations on his movements.  While we are of the view that a
24  modification to these conditions is required to reasonably assure
25  against the risk of flight (see discussion below at pp. 9-10), we find
26  and conclude that, notwithstanding the presumption, the Government has
27  not shown by a preponderance of the evidence that there are no
28  conditions or combination of conditions that would reasonably assure

1  the appearance of the Defendant as required.

2  **B.   <u>The Safety of the Community</u>**

3        The Government also bears the burden of proving, by clear and

4  convincing evidence, that no conditions or combination of conditions

5  would reasonably assure the safety of the community.  18 U.S.C. §

6  3142(f)(2)(B) (stating that the Government must support the "safety of

7  the community" factor with clear and convincing evidence).  We

8  recognize that there is a rebuttable presumption that Defendant is a

9  danger to the community.  Furthermore, Congress has determined that

10 drug trafficking is a danger to the community.  <u>See</u>, <u>e.g.</u>, Controlled

11 Substances Act, 21 U.S.C. § 801(2) (stating, "The illegal importation,

12 manufacture, [and] distribution . . . of controlled substances have a

13 substantial and detrimental effect on the health and general welfare

14 of the American people."); <u>see also</u> <u>Feroz v. I.N.S.</u>, 22 F.3d 225 (9th

15 Cir. 1994) (noting that, in immigration context, an applicant

16 convicted of the  "serious crime" of drug trafficking is also a

17 "danger to the community").  Thus, Defendant would pose a danger to

18 the community to the extent he continues his alleged methamphetamine

19 trafficking.

20       The Government contends that due to Defendant's role as the

21 leader of the conspiracy and the supplier of the methamphetamine, he

22 can continue his alleged trafficking activities essentially without

23 leaving his home.  For example, Defendant can continue trafficking

24 merely by making phone calls, and can tap into an existing network of

25 couriers, not all of whom have been incapacitated by incarceration.

26 The Government also points to Defendant's previous felony drug

27 conviction, in 1989, and two previous dangerous misdemeanors: for

28 battery in 1988, and for exhibiting a deadly weapon in 1994.  Given

1 these facts, the Government contends "there can be no guarantees that

2 defendant will not continue to supply drug dealers with drugs to sell,

3 or direct others to do so on his behalf." (Application 7:22-24.)

4     While we agree that there can be no guarantees, we also conclude

5 that the Government has relied on an erroneous proposition of law.  In

6 life, as with the Bail Reform Act of 1984, there are no absolute

7 guarantees.  Our inquiry is not whether the Defendant's behavior can

8 be guaranteed, but rather whether it can be "reasonably assured" that

9 he will not pose a danger to the community – in this case by engaging

10 in drug trafficking while on pre-trial release.

11     Although section § 3142(e) creates a presumption that Defendant's

12 release would endanger the community, Defendant has presented evidence

13 to at least meet that presumption.  As the Government conceded at the

14 hearing, it has no evidence that Defendant has engaged in any illegal

15 activities, much less drug trafficking, since the last transaction

16 alleged in the Indictment.  While the Government, understandably, may

17 not be in a position to specify the contours of its continuing

18 investigation related to this case, it is a reasonable inference that

19 Defendant has not been beyond the Government's interest since

20 September, 2007 – the last period alleged in the Indictment.

21     Moreover, we have also considered all factors that the Government

22 argued support its position that Defendant will likely return to drug

23 trafficking and that no conditions can reasonably assure against such

24 activity, including its argument that Defendant has been laying low

25 for this period because he knows that he and his associates are being

26 scrutinized.  The point is that regardless of the motivation, there is

27 no evidence that Defendant has returned to drug trafficking.  Although

28 Defendant has three previous convictions, the most recent one is from

1   1994 – about 17 years ago.  Nor have the circumstances changed

2   sufficiently for us to find that notwithstanding conditions of bond we

3   intend to order, Defendant will now return to drug trafficking despite

4   the current charges, and despite knowing that his alleged associates

5   are serving lengthy sentences for their actions.  Ultimately, we find

6   and conclude that despite the presumption, which the Defendant has

7   met, the Government's concerns, while legitimate, do not constitute

8   clear and convincing evidence that there are no conditions or

9   combination of conditions that would reasonably assure the safety of

10  the community if Defendant were released.[4]  We next modify the bond and

11  conditions imposed on Defendant's release to further "reasonably

12  assure" Defendant's presence and the safety of the community.

13

14              **IV.   MODIFICATIONS TO BAIL ORDER**

15       Although we deny the Government's Application for pre-trial

16  detention, and generally affirm Judge Woehrle, we order the following

17  modifications to the bail order.  We conclude that these modifications

18  are needed to satisfy us that we have reasonably assured against

19  flight and danger.  Thus, we now order that all of the conditions of

20  bond Judge Woehrle ordered shall remain with the

21  additions/modifications set forth below.

22       The amount of the appearance bond is hereby increased to

23  $150,000.  Of that amount, $50,000 shall be fully justified with

24  _____

25       [4]  We recognize that, as alleged in the Indictment,
    Defendant can fulfill his role in drug trafficking without
26  necessarily leaving his home.  While such possibility remains,
    and cannot be totally eliminated while Defendant is on release,
27  we conclude that on this record, the Government's evidence is
    insufficient to meet the clear and convincing standard, and that
28  there are conditions that will reasonably assure the safety of
    the community.

affidavits of surety signed by both Defendant's sister and his
brother-in-law, with deeding of their home.  The remaining $100,000
shall be supported by additional affidavits of surety signed by
Defendant's sister and his brother-in-law, but without further
justification.  Additionally, Defendant shall be subject to
unannounced searches of his home by a pretrial services officer,
accompanied by appropriate local law enforcement officers or Deputy
United States Marshals, at a reasonable time, and upon reasonable
suspicion that Defendant is engaging in criminal activity or violating
the terms of his pre-trial release.  Moreover, before approval of the
satisfaction of the bond, Defendant shall present both his sister and
his brother-in-law at a hearing before Judge Woehrle so that these
sureties can be fully advised of the potential consequences of such an
undertaking, and that it is clear that each is willing to serve as
surety.  As to the precise contours of such a hearing, we leave that
to Judge Woehrle's judgment and discretion.  This order constitutes
our referral of such hearing to Judge Woehrle for her consideration.

### V.   CONCLUSION

For the foregoing reasons, the Government's Application seeking
Defendant's detention is DENIED.  The temporary stay of Judge
Woehrle's order is hereby VACATED.  The amount and conditions of the
bond set by Judge Woehrle are modified as set forth above.


**IT IS SO ORDERED.**

**DATED:** 2/23/1011

_____
GEORGE H. KING
UNITED STATES DISTRICT JUDGE